UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

William Baer

v.                                Civil No. 15-cv-065-JD
                                  Opinion No. 2014 DNH 214
James Leach


O R D E R

William Baer brings suit under 42 U.S.C. § 1983 against
Gilford, New Hampshire, police officer, Lieutenant James Leach,
alleging that Leach violated his Fourth Amendment rights when he
arrested him for disorderly conduct.  Leach has moved for
summary judgment on the merits and on qualified immunity.  Baer
objects.


Standard of Review

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a); Santangelo v. New York Life Ins. Co., 785 F.3d
65, 68 (1st Cir. 2015).  "A genuine issue is one that can be
resolved in favor of either party and a material fact is one
which has the potential of affecting the outcome of the case."
Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 16 (1st Cir. 2013)
(quoting Perez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d
19, 25 (1st Cir. 2011)).  In deciding a motion for summary

judgment, the court draws all reasonable factual inferences in
favor of the nonmovant.  Kenney v. Floyd, 700 F.3d 604, 608 (1st
Cir. 2012).

Background

The events at issue in this suit occurred at the May 5,
2014, meeting of the school board for the town of Gilford, New
Hampshire.  Prior to the meeting, a group of parents were upset
about a book assigned to ninth-grade students that contained
sexually graphic material.  Kent Hemingway, the superintendent
of schools, and Susan Allen, the chair of the school board,
expected that many parents would attend the meeting and voice
their concern about the book.  Hemingway asked Leach to attend
the meeting because he wanted to maintain order.  It is
undisputed that Leach did attend the meeting and was present
during the events at issue in this dispute.

The meeting began with roughly thirty minutes devoted to
other school board business.  Allen then announced that she
would open the meeting to public comment.  Before doing that,
however, Allen stated that due to the number of people in
attendance, public comment would be limited to one two-minute
speaking period per person.  Allen also informed the audience
that the public comment session was an opportunity for citizens
to provide their opinions to the school board, but that it was

not a question and answer session, and that any specific
questions could be directed to the appropriate school
administrator during school hours.  Allen then asked if any
members of the public wanted to speak.

Baer was the first member of the public to speak.  He began
by expressing his concern that the book was assigned without any
notice to parents.  Baer then asked Hemingway to read from a
notice that the school sent to parents after the book was
assigned.  Allen interjected and reminded Baer that the public
comment period was not the proper forum to pose questions.  Baer
then stated "okay, I won't ask a question, please read it, is
that okay?"  Video Recording, at 35:07-09.[1]  Allen informed Baer
that Hemingway would not read the notice, again reminding him
that the public comment session was only an opportunity for Baer
to make a comment.

Baer then began questioning Allen about the legitimacy of
prohibiting questions during the public comment session.  In
response, Allen reiterated multiple times that the public could
state their views for the school board, but that it was not a
forum for a question and answer session.  Allen also provided

---

[1] Defendant attached a complete video recording of the
meeting as Exhibit D to his motion.  See Video Recording, Dkt.
9-5.

Baer with the names of school administrators that he could contact if he wanted answers to his questions.

This colloquy continued for nearly a minute until Joseph Wernig, a school employee sitting in the audience, interrupted Baer and informed the board that Baer's two minutes had expired. After being interrupted, Baer asked once again why no one would read the notice aloud. At that point, Allen informed Baer that his two minutes for speaking were over. Baer briefly argued against the two-minute limit, and Allen replied that she wanted to give everyone an opportunity to speak. Baer then concluded his remarks. In total, Baer spoke for around two minutes and forty-five seconds. See Video Recording, 34:10-36:55.

After Baer spoke, two more parents spoke and expressed concern about the book. During this time, Baer can be seen on a video recording of the meeting handing out sheets of yellow paper to members of the audience unimpeded. Wernig, who identified himself as a father of children in the Gilford school district, spoke next. As Wernig was finishing his comments, he stated that "these people will be dictating what you can and cannot read and what my kids cannot read." Video Recording, at 41:05-11.

Baer then interrupted Wernig, calling Wernig's statement "absurd." Id. at 41:11-17. Baer then proceeded to rebut

4

Wernig's comments.  Allen attempted to regain order of the meeting, saying "please sir" multiple times.  Baer spoke over Allen in a raised voice, continuing his rebuttal to Wernig's comments and addressing Allen's interjections directly by saying "please sir, that's fine, please sir, it's absurd.  Why don't you have me arrested?  Why don't we do that as a civics lesson?  Nice First Amendment lesson, right?  It's absurd."  Video Recording, at 41:16-41:23.  While Baer was saying this, Allen signaled to Leach.  Leach interpreted Allen's gesture as a request for him to intervene and regain order.

Allen asked Baer to respect the other speakers.  Baer responded in a raised voice, "like you're respectful of my daughter, right? And my children?  And you . . . . put this book out.  Why don't we read the notice that was put out?"  Video Recording, at 41:35-41:44.

At this time, Leach approached Baer and asked him to leave the meeting.  Video Recording, at 41:16.  Baer asked Leach why he had to leave and whether he was under arrest.  Baer can be heard on the video recording asking "because I violated the two-minute rule?"  Video Recording, at 41:52-53.  Leach then responded that Baer had to leave and that "they're asking you to leave."  Id. at 41:54.  Baer responded by saying "I guess you're gonna have to arrest me."  Id. at 41:05-41:11.  Leach then

grabbed Baer by the wrist and escorted him out of the meeting. In total, Baer's interruption of the meeting (from the time that Baer began speaking out of order until Leach approached him and asked him to leave) lasted around thirty-five seconds.

Leach then placed Baer under arrest.  Baer was later charged with disorderly conduct under RSA 644:2, II(e), which prohibits "knowingly refus[ing] to comply with a lawful order of a peace officer to move from . . . any public place;" RSA 644:2, III(b), which prohibits "[d]isrupting the orderly conduct of business in any public or government facility;" and RSA 644:2, III(c), which prohibits "[d]isrupting any lawful assembly or meeting of persons without lawful authority."

Baer moved to dismiss the criminal complaints in state court.  The court granted Baer's motion to dismiss, finding that there was a lack of evidence for a "reasonable trier of fact [to] find the Defendant guilty beyond a reasonable doubt." Dismissal Order (Plaintiff's Objection to Motion for Summary Judgment, Dkt. 12-2, Ex. 1,) at 4.

Baer then brought this § 1983 action against Leach, alleging that Leach violated his Fourth Amendment rights by arresting him without probable cause.

<u>Discussion</u>

Leach moves for summary judgment on two grounds.  First, Leach argues that the undisputed material facts show that he had probable cause to arrest Baer for disorderly conduct under RSA 644:2, II(e), III (b) & (c), the sections of the New Hampshire disorderly conduct statute that Baer was charged with violating. Second, Leach argues that even if he is not entitled to summary judgment on the merits, he is entitled to qualified immunity.

Baer objects, arguing that Leach did not have probable cause to arrest him for disorderly conduct at the school board meeting.  Baer further contends that Leach is not entitled to qualified immunity because the Fourth Amendment's prohibition against arrests absent probable cause is a clearly established right, and because a reasonable officer would have known that Baer's conduct did not meet the elements of disorderly conduct. Baer also argues that Leach is not entitled to summary judgment on the merits or on qualified immunity grounds because his comments at the meeting were protected under the First Amendment.

I.  <u>Fourth Amendment</u>

Leach argues that based on Baer's conduct at the meeting he had probable cause to believe that Baer violated the disorderly

conduct statute.  He also argues that he is entitled to
qualified immunity because the presence of probable cause to
arrest Baer at the meeting was at least arguable.

Baer responds with three principal arguments.  First, he
argues that the state court's order dismissing the criminal
complaints against him contained findings that are preclusive
and determinative of the probable cause and qualified immunity
inquiries at issue here.  Second, he argues that Leach did not
have probable cause because a reasonable officer would have
known that his conduct was not prohibited under RSA 644:2.
Finally, Baer argues that Leach cannot be entitled to qualified
immunity because the right to be free from arrests unsupported
by probable cause is clearly established, and because a
reasonable officer would have known that there was no probable
cause to arrest him.

### A.  Preclusive Effect of Criminal Proceeding

The state court held that no reasonable fact finder could
determine beyond a reasonable doubt that Baer committed
disorderly conduct.  Dismissal Order, at 4.  In doing so, the
state court judge also questioned the constitutionality of
Baer's arrest and made certain findings about whether Baer's

conduct was actionable under New Hampshire's disorderly conduct law.  Baer argues that these findings preclude summary judgment.[2]

When assessing whether a state court order has preclusive effect, federal courts apply the law of the state that issued the order.  SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 36 (1st Cir. 2008) ("Federal courts must give preclusive effect to state court judgments in accordance with state law.").  Under New Hampshire law, collateral estoppel, the doctrine barring relitigation of issues that have been previously decided in other proceedings,[3] is appropriate when the following requirements are met:

> The issue subject to estoppel must be identical in each action, the first action must have resolved the issue finally on the merits, and the party to be estopped must have appeared in the first action, or have been in privity with someone who did so.  Further, the party to be estopped

---

[2] Baer also briefly argues that the state court's rulings are "law of the case."  The law of the case doctrine is inapplicable here because it only applies to prior decisions made in the same litigation.  See Negron-Almeda v. Santiago, 579 F.3d 45, 52 n. 4 (1st Cir. 2009).

[3] Baer argues that the facts of the state court order "are barred from being re-decided pursuant to res judicata."  Although in its broadest sense, res judicata encompasses "all the various ways in which a judgment in one action will have a binding effect in another," the court interprets the precise argument here as seeking collateral estoppel, "which prevents the same parties, or their privies, from contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated in a prior suit."  Appeal of Hooker, 142 N.H. 40, 43, 694 A.2d 984, 986 (1997) (quoting Scheele v. Village District, 122 N.H. 1015, 1019) (1982)).

> must have had a full and fair opportunity to litigate the
> issue, and the finding must have been essential to the
> first judgment.

Simpson v. Calivas, 139 N.H. 1, 7 (1994).  Although Baer bears

the burden of showing that these requirements are met, see

Thomas v. Contoocook Valley School Dist., 150 F.3d 31 (1st Cir.

1998), he does not discuss the majority of these factors and

only argues that the order is preclusive because it is final.

The state court findings are not preclusive under this

standard.  Leach was not a party to Baer's criminal prosecution.

Baer cannot rely on privity doctrine because under New Hampshire

law there is no privity between a government and its officials

who are later sued in their individual capacity.  See Daigle v.

City of Portsmouth, 129 N.H. 561, at 569-574 (1987).[4]

Furthermore, the issues in the criminal proceeding are not

identical to the issues presented here.  The state court

determined "whether a reasonable trier of fact could find,

beyond a reasonable doubt, the Defendant guilty."  Dismissal

Order, at 3.  That standard is more stringent than the standards

at issue here.  Finally, to the extent that the state court's

---

[4] This approach is consistent with the one adopted by most
courts in § 1983 cases.  See Bilida v. McCleod, 211 F.3d 166
(1st Cir. 2001) (applying Rhode Island law) ("Although no Rhode
Island case in point has been cited to us, most precedent
indicates that individual state officials are not bound, in
their individual capacities, by determinations adverse to the
state in prior criminal cases.").

order touched on the constitutionality of Baer's arrest, that
discussion was not "essential" to the decision.  See Calivas,
139 N.H. at 9 (holding that findings cannot be a basis for
collateral estoppel unless they were essential to the judgment
in the prior proceeding).  Therefore, the state court order has
no preclusive effect here.

### B.  Claim on the Merits

Leach contends that Baer's claim fails because Leach had
probable cause to arrest Baer.   Baer argues that probable cause
was lacking.  The court need not resolve the question on the
merits as to whether probable cause existed to arrest Baer
because, as explained below, qualified immunity bars the claim.

### C.  Qualified Immunity

Qualified immunity "shields government officials performing
discretionary functions from liability for civil damages . . .
[if] their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known." Fernandez-Salicrup v. Figueroa-Sancha, 790
F.3d 312, 325 (1st Cir. 2015) (internal quotations omitted).
"This doctrine 'gives government officials breathing room to
make reasonable but mistaken judgments,' and 'protects all but
the plainly incompetent or those who knowingly violate the

law.'" Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014) (quoting Carroll v. Carman, 135 S. Ct. 348, 350 (2014)).

When assessing whether qualified immunity applies, courts employ a two-prong analysis. Fernandez-Salicrup, 790 F.3d at 325 (1st Cir. 2015). Under the first prong, the court must assess "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." Id. (internal quotations omitted). Under the second prong, the court determines "whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. (internal quotation marks omitted). If either prong is not satisfied, qualified immunity applies, and the plaintiff's claim fails. Rivera-Corraliza v. Morales, 794 F.3d 208, 215 (1st Cir. 2015).

Courts have the discretion to decide which step of the qualified immunity analysis to conduct first. Id. The Supreme Court has cautioned that courts assessing qualified immunity should avoid answering the constitutional question in the first prong when the analysis would rest on "uncertain interpretation of state law" or when the case is so "factbound" that the precedential value would be meaningless. Pearson v. Callahan, 555 U.S. 223, 238 (2009); see also Rivera-Corraliza, 794 F.3d at 215 (1st Cir. 2015). Because this case involves the fact-intensive inquiry of probable cause and whether it existed to

arrest Baer for state law violations, the court will assess the
"clearly established" prong first.  See Cox v. Hainey, 391 F.3d
25 (1st Cir. 2004) (explaining that the probable cause inquiry
is "fact-dependent" and "in most of these situations precedent
will take a court only so far.").

### 1. Clearly Established Prong

Baer asserts that his claim satisfies the second prong
because it is well-settled that arrests made without a warrant
must be supported by probable cause.  Although this statement is
a correct recitation of well-settled Fourth Amendment law, it
"sweeps so broadly . . . that it bears very little relationship
to the objective legal reasonableness" of Leach's actions.
Iacobucci v. Boulter, 193 F.3d 14, 21-22 (1st Cir. 1998).
Determining whether a right is clearly established for qualified
immunity purposes requires assessing the right "in light of the
specific context of the case, not as a broad general
proposition." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per
curiam).  As a result, the inquiry focuses on "whether the
violative nature of [the] particular conduct is clearly
established."  Id.

Accordingly, "[t]o be clearly established, the contours of
[a] right must have been 'sufficiently definite that any
reasonable official in the defendant's shoes would have

13

understood that he was violating it.'" Hunt, 773 F.3d at 368
(quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014)).  To
meet this standard, Baer must identify "then-existing precedent
. . . [that] placed the statutory or constitutional question . .
. beyond debate." Rivera-Corraliza, 794 F.3d at 215 (quoting
Plumhoff, 134 S. Ct. at 2023)).  In the context of a false
arrest claim, such as the one Baer brings here, that means that
the qualified immunity standard is satisfied "so long as the
presence of probable cause is at least arguable." Glik v.
Cunniffe, 655 F.3d 78, 88 (2011) (quoting Ricci v. Urso, 974
F.2d 5, 7 (1st Cir. 1992)).

                    i. Probable Cause Standard

      "Probable cause exists when police officers, relying on
reasonably trustworthy facts and circumstances, have information
upon which a reasonably prudent person would believe the suspect
had committed or was committing a crime." United States v.
Pontoo, 666 F.3d 20, 31 (1st Cir. 2011).  Probable cause does
not require certainty or a high degree of assurance, but only a
fair probability to believe that the arrestee has committed a
crime.  See Holder v. Town of Sandown, 585 F.3d 500, 504 (1st
Cir. 2009).  The probable cause inquiry is an objective one,
meaning that the "only relevant facts are those known to the
officer." Id.  When those facts are in reasonable dispute, the

                               14

fact-finder must resolve the dispute.  Id.  But when the facts
that the officer knew are not reasonably in dispute, evaluating
whether probable cause was present is a question of law.  Id.

Leach contends that he is entitled to qualified immunity
because he arguably had probable cause under RSA 644:2, II(e),
and RSA 644:2, III(b) & (c) to arrest Baer.

### ii. Disturbing Government Business or Assembly

Under RSA 644:2, III (b) & (c), a person is guilty of
disorderly conduct if he "purposely causes a breach of peace,
public inconvenience, annoyance or alarm, or recklessly creates
a risk thereof by . . . [b] [d]isrupting the orderly conduct of
business in any public or governmental facility . . . or [c]
[d]isrupting any lawful assembly or meeting of persons without
lawful authority."  Leach contends that based on Baer's conduct
it is at least arguable that he had probable cause to arrest
Baer for disorderly conduct under RSA 644:2, III (b) & (c).
Baer, on the other hand, argues that his interference was short
and limited, and therefore, his conduct did not constitute a
"disruption" under RSA 644:2, III.

In support of this contention, Baer cites State v. Comley,
130 N.H. 688 (1988).  In Comley, the New Hampshire Supreme Court
affirmed the conviction of a protestor for disorderly conduct
under RSA 644:2, III (b) for running down the aisle at Governor

Sununu's inaugural while the Sergeant-at-Arms was announcing
arriving guests, causing the proceedings to stop for one to one
and a half minutes while security officers removed him.  Id. at
690.  Baer argues that because his conduct was not as disruptive
as the defendant's in Comley, namely that it only lasted around
half a minute and did not cause a formal recess, Leach could not
have had probable cause to arrest him under RSA 644:2, III.
Additionally, Baer argues that under Comley "for speech to
amount to the crime of disorderly conduct . . . a person must
cause a disturbance significant enough to halt or alter orderly
proceedings, thereby justifying the State's restriction of his or
her free speech."  Pltff's. Mem., Dkt. 12-1, at 8.

     Comley, however, only determined that the conviction of the
defendant in that case, based on those facts, was supported by
the evidence.  In Comley, the New Hampshire Supreme Court did
not suggest (let alone clearly establish) that a defendant's
conduct need be at least as disruptive as the Comley defendant's
to constitute a disturbance under RSA 644:2, III.  Nor does
Comley establish a rule requiring a "significant" disturbance to
justify regulating speech as disorderly conduct, as Baer argues.
To the contrary, in upholding the constitutionality of RSA
644:2, III, as applied to the Comley defendant, the Comley court
specifically relied on the law's incidental effect on speech,

16

which it held <u>already</u> operated as a permissible time, place, and manner restriction.  <u>Id.</u> at 691-93. [5]  Thus <u>Comley</u> does not, as Baer argues, establish a minimal threshold of conduct required to establish a violation under RSA 644:2, III.

In this situation, the length of time and type of disruption are merely factors to be weighed and considered when determining probable cause, along with all of the other attendant circumstances.  Based on the factual record, it is undisputed that Leach observed the following events at the school board meeting.  Baer disregarded the rules governing public comment by first repeatedly posing questions to the board and then interrupting the meeting by speaking after he had already used his allotted time.  After Baer interrupted the meeting, Allen tried multiple times to regain order and to provide others the opportunity to speak.  Instead of coming to

---

[5] To the extent Baer argues that RSA 644:2, III(b), as interpreted by <u>Comley</u>, requires an additional First Amendment inquiry into whether the speech being restricted was compatible with the environment in which it was made, the court disagrees. In <u>Comley</u>, the New Hampshire Supreme Court held that RSA 644:2, III(b) is a permissible and reasonable time, place, and manner restriction as it applies to all speech because "the statute prohibits only that speech whose exercise, as distinct from its contents, interferes with the government's interest in preserving order in its business." 130 N.H. at 691-92. In any event, Baer has cited no authority supporting the proposition that speaking out of order and violating time restrictions are acts "compatible" with the normal functioning of a school board.

order, however, Baer spoke loudly over Allen and responded to her requests by mocking them and stating "why don't you arrest me?"  During this time, Allen signaled to Leach for his assistance.

These facts, observed by Leach, demonstrate that Baer interfered with both the orderly business of the school board and Allen's efforts to run an orderly school board meeting. Although, as Baer argues, his comments may have been short in duration, he has cited no authority that would have made it clear to Leach that such a disruption was too short to constitute a violation under RSA 644:2, III.  This lack of clarity is further supported by Baer's prior violation of the rules and antagonistic refusal to come to order, both of which weighed in favor of arresting Baer for disorderly conduct, despite the short duration of his interruption.

Under these circumstances, it was at least arguable that Leach had probable cause to arrest Baer for disorderly conduct under RSA 644:2, III (b) & (c).  In other words, it was not the case that any reasonable officer in Leach's shoes would have understood that arresting Baer violated his Fourth Amendment rights.

### iii. <u>Failure to Comply with a Lawful Order</u>

In addition, Leach is entitled to qualified immunity for the arrest under RSA 644:2, II(e).  RSA 644:2, II(e), provides that a person is guilty of disorderly conduct if "he or she . . . knowingly refuses to comply with a lawful order of a peace officer to move from or remain away from any public place."  RSA 644:2 further defines a "lawful order" as "a command issued to any person for the purpose of preventing said person from committing any offense set forth in this section . . . when the officer has reasonable grounds to believe that said person is about to commit any such offense, or when the said person is engaged in a course of conduct which makes his commission of such an offense imminent."  RSA 644:2, V (a) (1).

Leach argues that Baer's course of conduct provided reasonable grounds for him to believe that he would imminently commit disorderly conduct.  Because of that conduct, Leach contends that Baer's refusal to comply with his lawful order made probable cause to arrest under RSA 644:2, II(e) at least arguable.  Baer, however, contends that probable cause did not exist because Leach's order requiring him to leave the meeting was not a "lawful order" under RSA 644:2, II(e).

In support of this argument, Baer cites <u>State v. Dominic</u>, 117 N.H. 573, 575 (1977).  In <u>Dominic</u>, the New Hampshire Supreme

19

Court, responding to a question transferred to it by the
Superior Court, held that a town selectman could be found guilty
for refusing to comply with a lawful order of a police officer
to leave a selectmen's meeting.  Id. at 576.  The court in
Dominic determined that the officer's order was "lawful" because
the defendant continually interrupted another speaker, argued
with the chairman concerning his rulings, and ignored the
chairman's attempts to regain order.  Id. at 575.  Baer,
however, points out that the defendant in Dominic was asked to
leave only after he interrupted the meeting on multiple
occasions and was warned that continuing to do so would result
in his removal.

        In Dominic, the New Hampshire Supreme Court only determined
that the evidence at issue could support a conviction for
disorderly conduct.  Dominic does not hold that there is a
specified number of interruptions required before a police
officer can lawfully order a person to leave a public meeting.
Dominic also does not hold that a warning is a prerequisite for
an officer to issue a "lawful order."  In fact, the chair's
warning to the defendant in Dominic does not even appear to be
material to the court's analysis.  See Dominic, 117 N.H. at 126.[6]

_____

        [6] Baer also argues that Leach's order was not lawful
because, unlike in Dominic, there was no formal recess after he
refused to comply with Leach's order.  Baer, however, does not

More importantly, however, <u>Dominic</u> was decided in 1977, before the New Hampshire legislature defined "lawful order" under RSA 644:2.  See <u>State v. Biondolillo</u>, 164 N.H. 370, 378 (2012).  Pursuant to that definition, Leach needed "reasonable grounds to believe" that Baer was engaged in a course of conduct that made his commission of disorderly conduct imminent.  <u>See</u> RSA 644:2, V(a)(1).  As discussed above, Leach observed Baer violate the rules governing the public comment session multiple times and refuse to come to order despite Allen's request that he allow others the opportunity to speak.  Based on Baer's course of conduct and his persistence in the face of entreaties by Allen to respect other speakers, a reasonable officer could have determined that Baer would continue interfering with the school board meeting, making his disorderly conduct under sections RSA 644:2, III (b) & (c) imminent.[7]

---

explain how a subsequent event has any bearing on whether an officer's order was "lawful" at the time it was made.  In addition, the court in <u>Dominic</u> did not rely on the meeting's formal recess in its lawful order analysis.  <u>See</u> 117 N.H. at 575-76.

   [7] Baer argues briefly that Leach's order could not have been lawful because it violated Baer's right under the New Hampshire Constitution that his "access to governmental proceedings and records shall not be unreasonably restricted."  See N.H. Const., I, Art. 8.  Baer cites no authority, nor has the court identified any, to support the proposition that removing a person who continually speaks out of order at a public meeting is an unreasonable restriction on the New Hampshire Constitution's right to access governmental proceedings.  The

Accordingly, when Baer responded to Leach's order by saying "I guess you're gonna have to arrest me," <u>see</u> Pltff's. Mem. at 3, probable cause to arrest Baer under RSA 644:2, II(e) was at least arguable, i.e., it was not the case that any reasonable officer in Leach's shoes would have understood that arresting Baer violated his Fourth Amendment rights.[8]

## II. First Amendment

Baer also contends that Leach is not entitled to summary judgment on the merits or on qualified immunity because a reasonable officer would have known that his speech was protected under the First Amendment, and therefore could not serve as the basis for probable cause to arrest.  Baer did not bring a claim alleging a violation of the First Amendment. Therefore, he has not properly raised a First Amendment issue. Further, Baer's First Amendment theory is not persuasive.

---

court finds that removing Baer was reasonable under the circumstances.

[8] Baer also argues that probable cause could not have existed because Leach admitted in his deposition that he only arrested Baer because Baer consented to arrest.  As discussed above, however, Leach's subjective intent during the arrest is irrelevant to the probable cause inquiry.  Morelli v. Webster, 552 F.3d 12, 22 (1st Cir. 2009) (holding that police officer's statement "I'm not arresting you, I can't arrest you" is irrelevant to probable cause inquiry).

The central and dispositive inquiry in a false arrest claim under the Fourth Amendment, like the one Baer brings in this lawsuit, is whether the officer had probable cause to arrest the plaintiff.  See United States v. McFarlane, 491 F.3d 53, 56 (1st Cir. 2007) ("An arrest does not contravene the Fourth Amendment's prohibition on unreasonable seizures so long as the arrest is supported by probable cause").  That inquiry "is no different where First Amendment concerns may be at issue." United States v. Brunette, 256 F.3d 14, 17 (1st Cir. 2001) (considering probable cause in the search context); McCabe v. Parker, 608 F.3d 1068, 1077 (8th Cir. 2010) (making the same point in arrest context).[9]  Therefore, Baer's attempt to conflate these standards is contrary to the applicable legal standard.


## Conclusion

Because Leach at least arguably had probable cause under RSA 644:2, II(e), III(b) & (c), he is entitled to qualified immunity.  Based on qualified immunity, Leach is entitled to summary judgment on Baer's § 1983 false arrest claim.

---

[9] Furthermore, to the extent that Baer argues that Leach violated the First Amendment by arresting him because of his speech, Leach would be entitled to qualified immunity so long as the arrest was supported by probable cause.  See Reichle v. Howards, 132 S. Ct. 2088 (2012) (holding that as of 2006, "it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation").

For the foregoing reasons, the defendant's motion for summary judgment (document no. 9) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

November 24, 2015

cc:   Charles G. Douglas III, Esq.
      Andrew B. Livernois, Esq.